<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re:                                            :
                                                  :          Chapter 7
**ASHER HOROWITZ,**                               :
                                                  :          Case No. 14-36884 (CGM)
                                    Debtor.        :
                                                  :
------------------------------------------------------- x

------------------------------------------------------- x

**BURBERRY LIMITED and BURBERRY USA,**            :
                                                  :
                                    Plaintiffs,    :
                                                  :
v.                                                :          Adv. No. 15-09002 (CGM)
                                                  :
**ASHER HOROWITZ,**                               :
                                    Defendant.     :
------------------------------------------------------- x


**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


<u>**A** **P P E A R A N C E S**</u> :

Reich Reich & Reich, P.C.
235 Main Street
Suite 450
White Plains, NY 10601
*Counsel for Plaintiffs*
        By:     Jeffrey A. Reich

Eric Streich, P.C.
235 Main Street, Suite 420
White Plains, NY 10601
*Co-counsel for Plaintiffs*
        By:     Eric Streich

Genova & Malin, Attorneys
The Hampton Center

1136 Route 9
Wappingers Falls, NY 12590-4332
*Counsel for Defendant*
By:    Andrea B. Malin
        Thomas Genova

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Burberry Limited and Burberry USA's (collectively "Burberry" or

"Plaintiff") motion for summary judgment on Plaintiff's first, fourth and fifth causes of action,

seeking determinations of dischargeability. *See* Compl. ¶¶ 54–89, Feb. 6, 2015, ECF No. 1; Pl.'s

Mot. Summ. J. 1, Nov. 23, 2015, ECF No. 15 ("Pl.'s Mot.").[1] On summary judgment, Plaintiff

asserts it is owed a non-dischargeable debt by Defendant Asher Horowitz ("Debtor" or

"Defendant"), pursuant to 11 U.S.C. § 523(a)(6). *See* Pl.'s Mot. 1. In the alternative, Plaintiff

seeks a global denial of discharge under 11 U.S.C. § 727(a)(2)(A) or § 727(a)(4)(A). *See id.* For

the following reasons, the Court grants Plaintiff's motion for summary judgment on the grounds

that Defendant's debt to Plaintiff is non-dischargeable under § 523(a)(6).

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I), "determinations

as to the dischargeability of particular debts" and (J), "objections to discharges[.]"

## Background

On September 15, 2014, Debtor filed a voluntary petition for relief under chapter 7 of the

Bankruptcy Code. *See* Petition, *In re Horowitz*, No. 14-36884 (Bankr. S.D.N.Y. Sept. 15, 2014),

ECF No. 1. The last day to file any objections to discharge was July 9, 2015. *See* Stip., *In re*

---

[1] Unless otherwise indicated, references to documents filed in this case can be found on the docket of adversary
proceeding 15-09002.

*Horowitz*, No. 14-36884, ECF No. 39.  On February 6, 2015, Plaintiff filed a complaint against

the Defendant, seeking a determination of the dischargeability of particular debt and Defendant's

eligibility for discharge.  Compl. ¶¶ 54–89.

Plaintiff "is an international luxury brand involved in the design, manufacture,

advertising, distribution and sale of high quality apparel and accessories under its principal

trademarks . . . ."  Pl.'s Statement of Facts ¶ 1, Nov. 23, 2015, ECF No. 15-28 ("Pl.'s SMF").[2]

Before filing for bankruptcy, Defendant operated an unincorporated, online retail business under

---

[2] In response to Plaintiff's Statement of Facts, numbering 76 paragraphs, Defendant's Response to Plaintiff's
Undisputed Material Facts ("Defendant's Response Statement"), made only four general types of denials.
Defendant "denies knowledge or information sufficient to form a belief as to the truth of the allegations contained
in" certain paragraphs of the Plaintiff's Statement of Facts, "denies the allegations contained in," several other
paragraphs, "neither denies or admits" paragraphs 11 and 12 of Plaintiff's Statement of Facts, and "neither denies or
admits the allegations contained in" the remaining paragraphs of Plaintiff's Statement of Facts, "as the documents
speak for themselves."  Def.'s Resp. to Pl.'s Statement of Facts ¶¶ 1–4, Jan. 19, 2016, ECF No. 23 ("Def.'s Resp.
SMF").

 Local Bankruptcy Rule for the Southern District of New York ("Local Bankruptcy Rule") 7056-1(b)
requires a party moving for summary judgment to submit a statement of material facts.  Local Bankruptcy Rule
7056-1 also requires that
> (c) Papers opposing a motion for summary judgment shall include a correspondingly numbered
> paragraph responding to each numbered paragraph in the statement of the moving party, and if
> necessary, additional paragraphs containing a separate, short, and concise statement of additional
> material facts as to which it is contended that there is a genuine issue to be tried.
> (d) Each numbered paragraph in the statement of material facts required to be served by the
> moving party shall be deemed admitted for purposes of the motion unless specifically controverted
> by a correspondingly numbered paragraph in the statement required to be served by the opposing
> party.
> (e) Each statement by the movant or opponent pursuant to subdivisions (b) or (c) of this rule,
> including each statement controverting any statement of material fact by a movant or opponent,
> shall be followed by citation to evidence which would be admissible.

S.D.N.Y. LBR 7056-1(c)–(e).  On a motion for summary judgment, denials based on a lack of knowledge or
information sufficient to form a belief are insufficient to contest a disputed fact.  *See, e.g., Cooper v. New Rochelle*,
925 F. Supp. 2d 588, 605 (S.D.N.Y. 2013); *Aztar Corp. v. N.Y. Entm't, LLC*, 15 F. Supp.2d 252, 254 n.1 (E.D.N.Y.
1998) (citing *Toyomenka Pac. Petroleum, Inc. v. Hess Oil V.I. Corp.*, 771 F. Supp. 63, 67 (S.D.N.Y. 1991)).
Similarly, a response contending to neither admit or deny an allegation does not create a genuine issue of fact.  *See,
e.g., Universal Calvary Church v. New York*, 2000 U.S. Dist. LEXIS 15153, at *7 n.6 (S.D.N.Y. Oct. 13, 2000)
(citations omitted).  Statements denying allegations without a citation to any supporting evidence are also
insufficient to contest a disputed fact.  *See Guglielmo v. Marchon Eyewear, Inc.*, 2006 U.S. Dist. LEXIS 9146, at *1
n.1 (E.D.N.Y. Feb. 15, 2006).  Here, Defendant's Response Statement contains denials without citing the record,
attempts to deny based on lack of knowledge or information and neither admits nor denies a variety of factual
statements.  As such, these purported "denials" do not suffice to create a genuine dispute of material fact.

 In addition to Defendant's Response Statement, Defendant also submitted a Statement of Undisputed
Material Facts in Opposition to the Plaintiff's Request for the Entry of an Order for Summary Judgment
("Defendant's Opposition Statement").  Def.'s Statement of Facts in Opp'n, Jan. 21, 2016, ECF No. 27 ("Def.'s
Opp'n SMF").  To the extend Defendant does not allege a significantly different version of facts in its Opposition
Statement, supported by discernable evidence, the Court must treat Plaintiff's Statement of Facts as undisputed.

the name Designers Imports.  *See* Pl.'s SMF ¶¶ 2, 4 (citing Pl.'s Mot. Ex. B, at 2, Ex. C, Ex. D, at ¶¶ 18–21).  While operating Designers Imports, Defendant "violated Burberry's intellectual property rights by selling counterfeit Burberry merchandise on his website," www.designersimports.com.  *Id.* at ¶¶ 2–3 (citing Pl.'s Mot. Ex. B, at 5).  On March 29, 2005, Defendant, on behalf of himself and Designers, entered into a settlement agreement with Burberry.  *Id.* at ¶ 5 (citation omitted); *see also* Pl.'s Mot. Ex. C, at ¶ 6.2, 10–11.  In the settlement, Defendant promised that he had ceased purchasing merchandise from verified counterfeit sources and further agreed not to knowingly infringe on Burberry's trademarks in the future.  *See* Pl.'s Mot. Ex. C, at ¶¶ 2.1–2.6.  After Defendant executed the settlement agreement with Burberry, Defendant incorporated his retail company under the name Designers Imports, Inc. ("Designers").  Pl.'s SMF at ¶ 7 (citing Pl.'s Mot. Ex. F, at ¶¶ 19–21).  Defendant was the sole shareholder of Designers.  *Id.* at ¶ 8 (citing Pl.'s Mot. Ex. F, at ¶ 18).

Despite entering into the settlement agreement, Defendant continued to purchase and sell counterfeit Burberry goods through his website.  Pl.'s SMF ¶ 6 (citing Pl.'s Mot. Ex. E, at 12); *see also* Pl.'s Mot. Ex. G, at 2, 5, 7, 9.  On May 7, 2007, more than two years after entering into the settlement agreement, Burberry notified Defendant that Designers was the subject of an ongoing investigation by the United States Customs and Border Protection.  Pl.'s Mot. Ex. G, at 2, 5, 7, 9.  On May 22, 2007, Burberry filed a complaint in the United States District Court for the Southern District of New York against Designers (the "First Federal Action").  Pl.'s SMF ¶ 10 (citing Pl.'s Mot. Ex. H).  Burberry made claims for trademark counterfeiting and infringement, false designation of origin and dilution, breach of the settlement agreement, trademark infringement and unfair competition under New York common law, and asserted a

likelihood of injury to business reputation as well as deceptive acts and practices under the New York General Business Law. *Id.* at ¶ 11 (citing Pl.'s Mot. Ex. H).

After a trial in the First Federal Action, the court issued a decision finding Designers committed willful trademark infringement "based on its conduct spanning several years during which Defendant repeatedly sold a variety of counterfeit Burberry merchandise." *Burberry Ltd. v. Designers Imps., Inc.*, 2010 U.S. Dist. LEXIS 3605, at *13 (S.D.N.Y. Jan. 19, 2010). The federal court found Designers liable for $1,500,000.00 in statutory damages, plus reasonable attorneys' fees and costs. *Id.* at *32. In a *nunc pro tunc* Amended Final Judgment and Permanent Injunction ("Amended Final Judgment"), filed on July 29, 2010, the federal court set the final amount of damages at $2,592,070.89 and permanently enjoined Designers from infringing on Burberry trademarks. Pl.'s Mot. Ex. I.

On February 3, 2010, prior to the entry of the Amended Final Judgment, Defendant incorporated a new company, RTC Fashion Inc. ("RTC"), and created a new website. Pl.'s SMF ¶¶ 22–23 (citing Pl.'s Mot. Ex. B, at 2, Ex. J). Designers itself ceased to do business on February 26, 2010, before the federal court issued the Amended Final Judgment. *Id.* at ¶ 27 (citing Pl.'s Mot. Ex. L, at 66:2–5). Instead, on May 4, 2010, Defendant leased the old Designers' website to RTC for $500 a year. *Id.* at ¶ 29 (citing Pl.'s Mot. Ex. M). RTC continued to sell designer clothes and accessories through the new website. *Id.* at ¶ 24; *Burberry Ltd. v. RTC Fashion Inc.*, No. 110615/11, 2014 N.Y. Slip Op. 31232(U), at 2 (N.Y. Sup. Ct. May 9, 2014) ("*RTC*").

On September 16, 2011, Burberry filed a state court action (the "State Action") against RTC and Defendant personally, with its first cause of action seeking to pierce Designers' corporate veil to impose personal liability on Defendant "for the unsatisfied amount of the

judgment entered in the Federal Action against Designers in the sum of $2,591,778.49." Pl.'s

SMF ¶¶ 30–31 (citing Pl.'s Mot. Ex. N); *see also RTC*, 2014 N.Y. Slip Op. at 2. On May 9,

2014, the state court awarded summary judgment to Burberry on its first cause of action. *RTC*,

2014 N.Y. Slip Op. at 3. The state court saw fit to pierce the corporate veil, determining that "as

a matter of law, equity will intervene to pierce the corporate veil and permit the imposition of

personal liability in order to avoid fraud or injustice . . . ." *Id.* (internal citation and quotation

marks omitted).

Prior to the state court's final determination, Plaintiff filed a second federal action (the

"Second Federal Action") against Defendant in his personal capacity. *See* Def.'s Mem. Law in

Opp'n 7, Jan. 19, 2016, ECF No. 25; Pl.'s Reply 5, Feb. 16, 2016, ECF No. 33; Def.'s Opp'n

SMF Ex. B, at 1. In the Second Federal Action, Burberry sought a judgment that Defendant had

personally committed willful trademark infringement by selling the same counterfeit products

from the First Federal Action. *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43 (2d Cir. 2013).

On appeal, the Second Circuit held that the Second Federal Action was barred on *res judicata*

grounds. *Id.* at 46–47.

Before this Court, Plaintiff alleges that Defendant's personal liability on Designers' debt

to Burberry for willful trademark infringement is non-dischargeable under 11 U.S.C. § 523(a)(6),

as a debt "for willful and malicious injury by the debtor to another entity or to the property of

another entity." Pl.'s Mot. 8–11; 11 U.S.C. § 523(a)(6). Plaintiff claims summary judgment is

appropriate under 11 U.S.C. § 523(a)(6) based on collateral estoppel grounds. Pl.'s Mot. 5–10.

Plaintiff asserts that the First Federal Action found Designers willfully violated the Lanham Act

and further found the elements necessary to establish maliciousness in the § 523(a)(6) context.

*Id.* at 8–11. Defendant contends the State Court Action holds Defendant personally liable for the

debts of Designers so as to satisfy 11 U.S.C. § 523(a)(6)'s requirement that the injury be caused

by the Debtor. Pl.'s Reply 7–8.

In the alternative, Plaintiff seeks to deny the Debtor's discharge pursuant to

§ 727(a)(2)(A) for transferring, destroying, and/or concealing property within one year of filing

the bankruptcy petition, and § 727(a)(4)(A) for making a false oath in connection with the case.

Pl.'s Mot. 11–19. Under § 727(a)(2)(A) a discharge may be denied if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the
> estate . . . , has transferred, removed, destroyed, mutilated, or concealed . . . (A)
> property of the debtor, within one year before the date of the filing of the
> petition; . . . .

11 U.S.C. § 727(a)(2). Plaintiff argues that Defendant should be denied a discharge under §

727(a)(2)(A) for initially omitting the Designers website and licensing agreement from his assets

listed in his bankruptcy schedules, for concealing his interests in certain real property, and for

intentionally misrepresenting the nature of a $3,000 transaction. Pl.'s Mot. 11–15.

Plaintiff argues that a global denial of discharge is also warranted under § 727(a)(4)(A),

pursuant to which a discharge may be denied where "the debtor knowingly and fraudulently, in

or in connection with the case--(A) made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A).

Plaintiff argues Defendant failed to accurately disclose information to the estate, including

failing to name certain creditors, and for misrepresenting his income and expenses, all with the

intent to defraud his creditors. Pl.'s Mot. 15–19.

In opposition, Defendant states that neither the First Federal Action nor the State Action

considered whether Defendant engaged in willful and malicious trademark infringement. Def.'s

Mem. Law in Opp'n 2. Defendant contends the First Federal Action only considered whether

Designers was liable to Burberry for Designers' willful trademark infringement. Id. at 9.

Defendant argues the First Federal Action was only brought against Designers and, as such, is

not applicable to Defendant on the issues litigated and decided therein.  *Id.* at 9–10.  Defendant

asserts that the only action entitled to collateral estoppel is the Second Federal Action, and that it

estops Plaintiff from litigating whether Defendant engaged in willful and malicious trademark

infringement.  *Id.* at 8–9.  Defendant further argues that the standard for willful trademark

infringement is not the same as the standard for willful and malicious injury under § 523(a)(6).

*Id.* at 17–18.

Defendant asserts the State Action only held Defendant personally liable for Designers'

damages to the extent they arose out of Defendant's transfer of assets from Designers to RTC.

*Id.* at 13–14.  According to Defendant, the State Action's determination to pierce the corporate

veil is not enough for collateral estoppel here.  *Id.*

Defendant further opposes the entry of an order denying Defendant a global discharge on

the grounds that Plaintiff has not met its burden to show by a preponderance of the evidence that

Defendant intended to defraud his creditors by concealing assets, or that Defendant knowingly

and fraudulently made a false oath in the Defendant's bankruptcy case.  *Id.* at 19, 25.

## <u>Discussion</u>

Federal Rule of Civil Procedure 56(a), made applicable in this adversary proceeding by

Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted

"if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Bankr. P. 7056.  Summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (internal citation and quotation marks omitted).

The moving party has the initial burden to establish the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23 (citations omitted). In determining whether the moving party has met this burden, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citations omitted). To establish the absence of a genuine issue of material fact, the moving party need not support its motion with affidavits. *Celotex*, 477 U.S. at 323. This is due to the fact that Rule 56 "does not require the moving party to *negate* the elements of the nonmoving party's case . . . ." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (quoting *Celotex*, 477 U.S. at 323).

Once the moving party has shown there are no genuinely disputed material facts, the non-moving party must go beyond the pleadings to demonstrate the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). On a motion for summary judgment, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A court must grant a motion for summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Collateral estoppel and the related doctrine of *res judicata* "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citations omitted). Where there is a final judgment on the merits, *res judicata* prevents the

parties from asserting claims based on the same cause of action. *See Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94 (citation omitted). The doctrine of offensive collateral estoppel permits "a plaintiff [to] foreclose a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).

Where the standard of proof on the issue in question requires proof by at least a preponderance of the evidence, "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action." *Grogan v. Garner*, 498 U.S. 279, 284 (1991). In bankruptcy, the party objecting to discharge must prove its claim by a preponderance of the evidence. *See, e.g.*, *Grogan*, 498 U.S. at 286; *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000). Although the standard of proof to prevail on a claim for non-dischargeabilty is a preponderance of the evidence, "exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *In re Hyman*, 502 F.3d 61, 66 (2d Cir. 2007) (citing *In re Renshaw*, 222 F.3d at 86; *In re Hayes*, 183 F.3d 162, 167 (2d Cir. 1999)).

Under 11 U.S.C. § 523(a)(6), a discharge will not be effective against any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." To successfully plead a claim for non-dischargeability pursuant to § 523(a)(6), a plaintiff must establish that the debtor "acted willfully in committing the injury," and that the debtor "acted maliciously in committing the injury." *Yash Raj Films (USA), Inc. v. Akhtar (In re*

*Akhtar)*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007) (citations omitted). The Supreme Court has held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The requirement that the injury be willful "may be satisfied if the debtor had actual knowledge that he or she was violating the law and the intent to bring about injury." *In re Akhtar*, 368 B.R. at 127–28.

The Second Circuit has interpreted malicious to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996) (citations omitted). Malice may be implied based on the surrounding circumstances, or found constructively. *Ball*, 451 F.3d at 69 (citations omitted); *Navistar*, 94 F.3d at 88 (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995); *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir. 1995)).

"Malice may be found where the debtor breached a legal duty 'wilfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of a discharge.'" *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 42 (Bankr. E.D.N.Y. 2005) (citations omitted). Courts have found malicious conduct where the Defendant was on notice and yet "continued to infringe the plaintiffs' copyrights in spite of, and indeed in defiance of numerous warnings." *In re Ahmed*, 359 B.R. at 42. Additionally, malice may also be implied where "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005) (internal quotations and citations omitted).

Plaintiff alleges that the willful and malicious elements of § 523(a)(6) were decided in the First Federal Action, and that Defendant is now collaterally estopped from relitigating those issues here.  "[T]he application of the collateral estoppel doctrine differs based on the forum in which first judgment was entered."  *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 800 (Bankr. E.D.N.Y. 2014).  The federal standard for collateral estoppel governs the preclusive effect of a federal decision resolving issues of federal law.  *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  Collateral estoppel under federal law requires that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).  The party arguing for the application of collateral estoppel has the burden to establish all four elements.  *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (citations omitted).

Plaintiff has shown the identity of the issues for willful and malicious injury.  To show the identity of the issues, the Court must analyze "whether the issues presented by this litigation are in substance the same as those resolved against the" Defendant previously.  *Montana v. United States*, 440 U.S. 147, 155 (1979).  The first element is willfulness.  Under the Lanham Act, a person is liable for trademark infringement when, without the consent of the trademark holder, that person

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).  Although liability for trademark infringement does not require a finding

of willfulness, the statutory damages for willful trademark infringement increase to $2,000,000

per infringement.  *See* 15 U.S.C. § 1117(b), (c); *Hermes Int'l v. Kiernan*, 2008 U.S. Dist. LEXIS

70506, at *10 (E.D.N.Y. Aug. 28, 2008).  Willfulness requires a finding that "the defendant had

knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the

possibility."  *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (quoting *Twin

Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993)) (internal

quotation marks omitted).

Here, the First Federal Action found Designers acted willfully based on Designers'

continuing sales of counterfeit Burberry merchandise, despite the fact Burberry "repeatedly

placed Defendant on notice that Defendant was violating the trademark law by selling counterfeit

Burberry merchandise."  *Burberry Ltd.*, 2010 U.S. Dist. LEXIS 3605, at *13.  In making a

finding of willfulness, the court further found that Designers had repeatedly and knowingly

violated the settlement agreement with Burberry.  *Id.* at 25.  Additionally, the court determined

Designers "willfully failed to investigate the bona fides of Burberry-branded goods it purchased

for sale," and failed to implement procedures to prevent the sale of counterfeit merchandise.  *Id.*

The court also found that Designers was aware Burberry had placed a test order, and instead of

filling the order from its own stock, sent Defendant's wife, Mrs. Horowitz, "to an authorized

Burberry store to purchase items to fill the order."  *Id.* at 26.

The findings in the First Federal Action satisfy the legal definition for willfulness in

bankruptcy.  Pursuant to the federal standard for willfulness, Designers knew it was violating the

law and intended to cause injury to Burberry.  *Kawaauhau*, 523 U.S. at 61; *Yash Raj Films

(USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 127–28 (Bankr. E.D.N.Y. 2007).  Burberry

had repeatedly put Designers on notice of its illegal conduct, and Designers signed a settlement

agreement promising to stop further violations.  The federal court found Designers violated this

settlement agreement knowingly, and continued to violate the law by selling counterfeit

merchandise.  *Burberry Ltd.*, 2010 U.S. Dist. LEXIS 3605, at *25.  Designers failed to

implement any security measures to prevent future violations and failed to investigate its

purchases of Burberry-branded goods.  *Id.*  The injury caused by trademark infringement is the

act of infringement.  *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 451 (Bankr. N.D.

Cal. 2005).  The Ninth Circuit has held that in an action for trademark infringement, "intentional

infringement is tantamount to intentional injury under bankruptcy law."  *Smith v. Entrepreneur

Media, Inc. (In re Smith)*, 2009 Bankr. LEXIS 4582, at *26 (B.A.P. 9th Cir. Dec. 17, 2009).

Designers intentionally infringed on Burberry's trademark.  This is sufficient to constitute a

willful injury.

Here, malice may be inferred from the First Federal Action's determination that

Designers willfully, continually and deliberately infringed on Burberry's trademarks.  Designers

had repeated notice of its infringement.  *Burberry Ltd.*, 2010 U.S. Dist. LEXIS 3605, at *13.

Designers knew that the infringement was "contrary to commonly accepted duties in the ordinary

relationships among people," as it had signed a settlement agreement acknowledging its

infringement and promising to take steps to refrain from future infringements.  *Voyatzoglou v.

Hambley (In re Hambley)*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005).  Even going beyond

intentional infringement, Designers actively tried to deceive and mislead Burberry by falsely

filling Burberry's test order with inventory purchased from a legitimate Burberry retailer.

*Burberry Ltd.*, 2010 U.S. Dist. LEXIS 3605, at *26.  The federal court also found that "[s]ince

there was willful infringement and no 'extenuating circumstances,'" Burberry was entitled to

attorneys' fees and costs.  *Id.* at *30–31.  In other words, Designers' conduct was "wrongful and without just cause or excuse . . . ."  *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996).  The elements of willful trademark infringement present the same issues required to show willful and malicious injury under § 523(a)(6).  Plaintiff has satisfied its burden to show the identity of the issues for willful and malicious injury under § 523(a)(6).

The Court also finds that Plaintiff has met its burden on the second element required for collateral estoppel under federal law.  The issues of willful and malicious injury were actually litigated in the First Federal Action.  The Defendant participated in the litigation, and the federal court's determination was the result of a full-fledged trial.  *See, e.g.*, *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 801 (Bankr. E.D.N.Y. 2014) (internal citations omitted).

The Court finds that Defendant had a full and fair opportunity to litigate the issues of willful and malicious injury in the First Federal Action.  In the Second Federal Action, the Second Circuit dismissed the case on *res judicata* grounds, holding that Defendant and Designers were in privity.  *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43–45 (2d Cir. 2013).  The Second Circuit relied on several undisputed facts, including that Defendant was "the sole shareholder of, officer of and decision maker for[ ] the Designers Imports corporation," that Defendant "controlled and directed Designers[ ] Imports['] participation" in the First Federal Action, that Defendant "instructed the corporation's lawyers, made all client decisions for Designer Imports as a litigant in the case, and otherwise controlled the participation of Designers Imports in the lawsuit."  *Id.* at 44 (internal citations and quotation marks omitted).  It cannot be disputed that Defendant had a full and fair opportunity to litigate the issues underpinning willful and malicious injury in the First Federal Action.

The final element required for collateral estoppel on the issues of willful and malicious injury is that the federal court's findings were necessary to support the Amended Final Judgment. A finding of willful trademark infringement results in increased statutory penalties. *See* 15 U.S.C. § 1117(b), (c). The Amended Final Judgment in the First Federal Action determined the amount of liability based on a finding of willful trademark infringement. *See* Pl.'s Mot. Ex. I. Additionally, the Amended Final Judgment awarded Plaintiff reasonable attorneys' fees and costs based on the finding that there were no extenuating circumstances for Designers' conduct. *See id.*; *see also Burberry*, 2010 U.S. Dist. LEXIS 3605, at *30–31. Defendant does not dispute this element. Accordingly, Plaintiff has met its burden to preclude the relitigation of willful and malicious injury.

Although Defendant had a full and fair opportunity to litigate whether Designers' caused willful and malicious injury in the First Federal Action, the injury must be attributable to Defendant's conduct for the debt to be non-dischargeable under 11 U.S.C. § 523(a)(6). Although Defendant's conduct prior to the settlement agreement with Burberry is not part of the debt at issue here, the First Federal Action found that Defendant, in his individual capacity, sold counterfeit Burberry merchandise through the Designers website, entered into the settlement agreement with Burberry, agreed to cease all counterfeit sales, and paid damages to Burberry. Pl.'s SMF ¶¶ 2–7; *see also* Debtor's Aff. in Opp'n to Summ. J. ¶¶ 3–7, Jan. 21 2016, ECF No. 27-5. The First Federal Action found Designers sold additional counterfeit Burberry merchandise after entering into the settlement agreement, committing willful trademark infringement. *Burberry*, 2010 U.S. Dist. LEXIS 3605, at *10, 13–15, 25–26. To find the damages ordered by the First Federal Action to be non-dischargeable, Plaintiff must show that

the Defendant is collaterally estopped from relitigating the issue of his personal liability based on the State Action.

Where the issues to be precluded were determined by a state court, the law of the state where the underlying proceedings took place controls the standard for collateral estoppel. *See* 28 U.S.C. § 1736; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  In New York, "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985); *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir.1991)).  To establish the identity of the issues, the matter must have been "'actually litigated and determined' in a prior action." *Kaufman*, 482 N.E.2d at 67 (citations omitted).  Further, "the issue that was raised previously must be decisive of the present action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (internal citations and quotation marks omitted).

In New York, the proponent of collateral estoppel has the burden to establish the identity of the issues, that the issues were actually litigated and determined, and that they are decisive of the present action. *In re Dunn*, 27 N.E.3d 465, 468 (N.Y. 2015) (citations omitted); *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).  The party opposing collateral estoppel has the burden "to establish the absence of a full and fair opportunity to litigate." *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 636 (N.Y. 1990) (citing *Kaufman*, 482 N.E.2d at 67); *see also Evans*, 469 F.3d at 281–82 (citations omitted).

The Court finds that the Plaintiff has met its burden to show Defendant's personal liability for willful and malicious injury was actually litigated and decided in the State Action,

and that the issue is decisive of this non-dischargeability action under § 523(a)(6).  Defendant's

main argument in opposition is that Defendant's responsibility for Designers' willful and

malicious conduct is an issue that has not been previously litigated.  Defendant's argument is

misplaced.  The State Action determined that Defendant controlled Designers to such an extent

that Defendant may be held liable for the acts of Designers.  *Burberry Ltd. v. RTC Fashion Inc.*,

No. 110615/11, 2014 N.Y. Slip Op. 31232(U), at 5 (N.Y. Sup. Ct. May 9, 2014).

   The issue of Defendant's culpability for willful and malicious injury was previously

litigated and decided by the state court's determination to pierce the corporate veil.  As federal

courts have recognized, "New York courts have made clear that the veil-piercing standard is

demanding.  The Court of Appeals has repeatedly emphasized that '[t]hose seeking to pierce a

corporate veil . . . bear a heavy burden.'"  *Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 2015

U.S. Dist. LEXIS 114787, at *29 (S.D.N.Y. Aug. 28, 2015) (internal citations and quotation

marks omitted).  New York law will permit disregard of the corporate form where there is either

"a showing of fraud or upon complete control by the dominating corporation that leads to a

wrong against third parties."  *Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131,

138 (2d Cir. 1991) (citing *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d

698, 703 (2d Cir. 1990)).  In other words, the corporate veil may "be pierced either when there is

fraud or when the corporation has been used as an alter ego . . . ."  *ITEL Containers*, 909 F.2d at

703; *see also Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979).

   To pierce the corporate veil in New York based on the alter ego theory of liability, the

individual to be held liable must "(1) have exercised such control that the subsidiary 'has become

a mere instrumentality' of the parent, which is the real actor; (2) such control has been used to

commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to

plaintiff." *Wm. Passalacqua Builders*, 933 F.2d at 138 (citing *Lowendahl v. Baltimore & Ohio R.R. Co.*, 287 N.Y.S. 62 (N.Y. App. Div. 1936), *aff'd*, 6 N.E.2d 56 (1936). Per the very language of the standard, a determination of liability based on the alter ego theory is a determination that the party in control is the "real actor." *See id.* "By definition, an alter ego corporation possesses no independent volition." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 53 (Bankr. E.D.N.Y. 2013).

Here, the state court based its determination to pierce the corporate veil on the alter ego theory of liability. According to the state court, "piercing the corporate veil generally 'requires a showing that the individual defendants 1) exercised complete dominion and control over the corporation, and 2) used such dominion and control to commit a fraud or wrong against the plaintiff which resulted in injury.'" *RTC*, 2014 N.Y. Slip Op. at 3 (quoting *Damianos Reality Group, LLC v. Fracchia,* 825 N.Y.S.2d 274, 276 (N.Y. App. Div. 2006)). The state court held that "[Defendant] completely dominated and controlled [Designers], and abused the corporate form to advance his own personal interests." *RTC*, 2014 N.Y. Slip Op. at 5. The state court further held that "Plaintiffs have shown that [Defendant] exercised his control to commit a wrong against the plaintiffs by dissolving Designers assets and transferring its domain name to his new company RTC, thereby rendering Designers incapable to satisfy the Federal Action judgment." *Id.* The state court granted summary judgment on Plaintiff's first cause of action, which it summarized as "piercing the corporate veil, in order to hold [Defendant] liable for the Federal Action judgment." *Id.* at 3.

The state court's determination to pierce the corporate veil was a finding that Defendant was responsible for the prepetition actions of Designers. The State Action found Designers to be an alter ego of Defendant on May 9, 2014, prior to Defendant's bankruptcy filing. *See RTC*,

2014 N.Y. Slip Op. at 6.  As a result, and for purposes of conduct attributable to the Debtor under § 523(a)(6), "the Debtor always remained inseparable from th[e] corporate fiction[ ]. The actions and property of [Designers] were thus the actions and property of the Debtor . . . ." *Lisa Ng*, 494 B.R. at 53.  The state court's determination to pierce the corporate veil is sufficient for a finding under § 523(a)(6) that Defendant was responsible for willful and malicious injury to Burberry.

Further, the Second Circuit's decision in the Second Federal Action weighs in favor of collateral estoppel on Defendant's personal liability.  The Second Circuit found that the veil-piercing claim in the State Action was the appropriate means to impose liability on Defendant. *Burberry Ltd. v. Horowitz*, 534 F. App'x at 46.  The Second Circuit dismissed Burberry's Second Federal Case against Defendant, holding that Defendant and Designers had been in privity during the First Federal Action.  *Id.* at 43–45.  As previously noted, the Second Circuit relied on Defendant's extensive relationship with Designers in the First Federal Action, including the fact that Defendant directed Designers' lawyers how to proceed.  *Id.* at 44.  The Second Circuit reasoned that "Burberry has already filed a veil-piercing action in New York state court, through which it seeks to hold Horowitz personally liable for the outstanding federal judgment against Designers Imports.  That litigation provides the appropriate vehicle for resolution of Burberry's claims against Horowitz individually."  *Id.*  According to the Second Circuit, the State Action would determine Defendant's personal responsibility for the injuries inflicted on Burberry.  This Court finds that Plaintiff has met its burden to show the issue of Defendant's liability for the conduct at issue was previously litigated, decided, and is decisive of the current dispute under § 523(a)(6).

In the alternative to the non-dischargeability claim under § 523(a)(6), Plaintiff seeks to deny Defendant a global discharge pursuant to § 727(a)(2)(A) or § 727(a)(4)(A).  Pl.'s Mot. 1. As the Court has found Defendant's debt to Plaintiff to be non-dischargeable under § 523(a)(6), the Court will not address Plaintiff's alternate arguments at this time.

## <u>Conclusion</u>

For the foregoing reasons, the Plaintiff's motion for summary judgment on its first cause of action is granted.  The parties are to submit an order in conformity herewith.



**/s/ Cecelia G. Morris**

**Dated: March 14, 2016**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**